UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK PACINO,<br><br>  Plaintiff,<br><br>v.<br><br>LUIS OLIVER, et al.,<br><br>  Defendants. | Case No. 18-cv-06786-RS<br><br>**ORDER GRANTING DEFENDANT HAALAND'S MOTION TO DISMISS, GRANTING DEFENDANT RUSS'S MOTION TO DISMISS, DENYING DEFENDANT OLIVER'S MOTION TO DISMISS, AND STAYING FURTHER PROCEEDINGS** |

## I. INTRODUCTION

*Pro se* plaintiff Frank Pacino seeks to vindicate his fractional interest in a property located on the California reservation of the Round Valley Indian Tribes ("RVIT"). This effort began modestly, with Pacino's accusation that the family of defendant Catherine Sanchez Freeman Oliver ("Oliver")[1] had taken unlawful possession of the property. From there, it has grown to encompass defendant Debra Haaland, Secretary of the United States Department of the Interior ("Secretary Haaland"), against whom Pacino brings a mandamus claim geared toward Oliver's eviction; and defendant James Russ, President of the RVIT Tribal Council ("President Russ"), who Pacino blames for a tribal resolution purporting to grant Oliver a lifetime lease. In separate

---

[1] Oliver's son-in-law, Luis Oliver, as well Luis's wife, Jessica Hoaglen-Oliver (together with Catherine, "the Olivers"), are also named defendants. Consistent with the parties' agreement, *see* Dkt. 80, the Clerk shall lift the entries of default previously entered against Luis and Jessica upon issuance of this order. Pacino's motion for default judgment against the Olivers, *see* Dkt. 74, is hereby denied as moot.

motions, Secretary Haaland, President Russ, and Oliver now move to dismiss for lack of subject matter jurisdiction. For the reasons set forth herein, the motions of Secretary Haaland and President Russ are granted; Oliver's is denied; and this matter is stayed pending Pacino's exhaustion of tribal court remedies.

## II. BACKGROUND

### A. Allegations

Pacino, a person of Indian descent and RVIT tribal citizen, possesses a roughly 8 percent interest in Round Valley Allotment Number 621 ("the Allotment"), which lies entirely within the RVIT's Covelo, California reservation. Pacino shares the Allotment with 40 other co-owners; pertinently, the RVIT holds a roughly 21 percent interest. As a fractionated parcel of Indian land, the Allotment predominantly is held in trust for its owners by the United States, and therefore may not be leased without the approval of both a majority of its owners and the Secretary of the Interior. *See* 25 U.S.C. § 2218; 25 C.F.R. § 162.012. No lease of the Allotment has been recorded pursuant to this process.

In July 2017, Pacino discovered the Olivers had taken up residence on the Allotment, installed a 6-foot fence along its perimeter, and locked the main entrance gate. That fall, when Pacino relayed these circumstances to RVIT law enforcement, he was told the RVIT Chief of Police had been given a tribal directive not to cite the Olivers for trespassing. Pacino then contacted the Bureau of Indian Affairs ("BIA"), prompting the agency to send the Olivers a December 5, 2017 Cease and Desist letter. The letter read in part:

> This office has received an allegation that there are individuals living on the allotment known as Round Valley No. 621. A review of our records indicates there are no approved Residential Leases on the allotment, which means no one is authorized to live on the allotment.
>
> . . .
>
> There are 41 co-owners on the allotment . . . Unless an individual is in possession of an approved residential/homesite lease, their occupancy is illegal, without proper consent, and is subject to compensation to all co-owners for their use and occupancy.

Second Amended Complaint ("SAC"), Ex. B, Dkt. 27-1 at 10. After making informal inquiries as to whether this letter would be followed by further enforcement activity, Pacino was advised that, because the matter was not a high BIA priority, he should pursue it on his own.

On December 28, 2017, the RVIT Tribal Council passed Resolution Number RV-2017-066 ("the Resolution"), "approv[ing] and authoriz[ing] a life tenure on [the Allotment] for Cathy Oliver." See SAC, Ex. F, Dkt. 27-1 at 29. Before doing so, the Tribal Council neither sought the consent of a majority of Allotment co-owners nor secured approval from the Secretary of the Interior. Minutes from the December 28 meeting chronicle discussion of the Resolution under the heading "Letter—BIA—RE: Cease & Desist," and reveal that Oliver was present during the Tribal Council's deliberations.

Pacino brought an ejectment action against the Olivers in RVIT tribal court in early February 2018. Some weeks later, while that action was still in its preliminary stages, President Russ signed the Resolution into tribal law. Pacino pressed ahead with his lawsuit, eventually drawing out the Olivers' assertion, offered as an affirmative defense, of a right to occupy the Allotment without the co-owners' consent. Ultimately, though, that course of action—like every other—proved unavailing. In September 2018, the tribal trial court dismissed Pacino's complaint, concluding it lacked subject matter jurisdiction. Rather than continuing on to the Tribal Court of Appeals, Pacino filed this action.

### III. DISCUSSION

Following multiple rounds of motions practice, Pacino's operative complaint, construed with the liberality his *pro se* status requires, distills to two bases for relief. First, Pacino brings a claim against the Olivers and President Russ for violation of the General Allotment Act ("GAA"), insisting he has been "unlawfully denied or excluded from [an] allotment . . . to which he is lawfully entitled by virtue of [an] Act of Congress." See 28 U.S.C. § 345. Second, he brings a mandamus claim against Haaland, arguing the Secretary has failed "to perform a duty owed" to him—namely, evicting the Olivers. See 28 U.S.C. § 1361.

In a trio of motions, Secretary Haaland, President Russ, and Oliver now move to dismiss.

Beyond revealing the substantive insufficiency of Pacino's averments against Secretary Haaland and President Russ, these motions have the welcome effect of clarifying a procedural path forward. To proceed in this forum, Pacino must redirect his energies toward exhausting other avenues of relief.

**A. Secretary Haaland**

The Secretary of the Interior moves for 12(b)(1) dismissal of Pacino's mandamus claim. "A writ of mandamus is appropriately issued only when (1) the plaintiff's claim is clear and certain; (2) the defendant official's duty to act is ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994) (internal quotation marks and citation omitted). Here, Secretary Haaland points to the SAC's failure to satisfy the second and third of these criteria. As Pacino's non-opposition impliedly concedes, she is correct on both scores.

In its current form, the SAC forgoes any meaningful attempt at depicting Secretary Haaland's "ministerial" duty to follow up on the BIA's Cease & Desist letter. Nor would it seem such a showing is easily made: under BIA regulations, "[i]f an individual . . . takes possession of . . . Indian land without a lease and a lease is required," the agency "*may* take action to recover possession, including eviction, on behalf of the Indian landowners and pursue any additional remedies available under applicable law." 26 C.F.R. § 162.023 (emphasis added). Yet, more fundamentally—and supposing Pacino could allege facts plausibly nudging the Olivers' eviction past the bounds of BIA discretion—"[t]he common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief[.]" *Heckler v. Ringer,* 466 U.S. 602, 616 (citations omitted). At present, Pacino has not so much as formally appealed the BIA's inaction, let alone elicited an APA-oriented final agency action. *See* 25 C.F.R. § 2.8 (setting out the process for appealing a BIA official's inaction); *see also Independence Min. Co. v. Babbitt,* 105 F.3d 502, 507 n.6 (9th Cir. 1997) (evincing doubt around "the applicability of the traditional mandamus remedy under [§ 1361] where there is an adequate remedy under the APA"). Pacino's mandamus claim accordingly is dismissed.

**B. President Russ**

President Russ likewise attacks the SAC on the basis of subject matter jurisdiction. Of his motion's many plays on the theme of tribal sovereign immunity, two are persuasive. As a precondition to federal litigation, Pacino must further exhaust available tribal court remedies. Should he return to this forum after doing so, any renewed claim against President Russ under the *Ex Parte Young* doctrine must aver, in concrete terms, an enforcement nexus between President Russ and the Resolution.

### 1. **Exhaustion of Tribal Court Remedies**

Where tribal jurisdiction over a controversy "is 'colorable' or 'plausible,' a plaintiff must first exhaust any remedies before the tribal court." *Wilson v. Horton's Towing,* 906 F.3d 773, 777 (9th Cir. 2018) (quoting *Marceau v. Blackfeet Hous. Auth.,* 540 F.3d 916, 920 (9th Cir. 2008)). Rooted in the principle of comity amongst sovereigns, the exhaustion rule, while not technically "a jurisdictional bar,"[2] nevertheless is "a prerequisite to a federal court's *exercise* of its jurisdiction." *See Grand Canyon Skywalk Development, LLC v. 'Sa' Nyu Way Inc.,* 715 F.3d 1196, 1200 (9th Cir. 2013) (emphasis added) (citation omitted). Until a tribal judicial system's "appellate review is complete," the tribe "ha[s] not had a full opportunity to evaluate the claim and federal courts should not intervene." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 17 (1987).

Here, Pacino—an RVIT tribal citizen—raises issues relating to his ownership interest in tribal land. Without passing on the wisdom of the RVIT tribunal's trial-level determination, tribal court jurisdiction over those issues is, at a theoretical minimum, "colorable." *See, e.g., Marceau*, 540 F.3d at 921 (finding tribal court jurisdiction "unquestionably colorable" where "[p]laintiffs are tribal members, [d]efendant . . . is a tribal entity, and at least some key events . . . occurred on tribal lands"). Pacino thus is obliged to afford the "tribal appellate courts . . . the opportunity to review the determinations of the lower tribal courts[.]" *LaPlante,* 480 U.S. at 17. Because he has

---

[2] Although President Russ's briefing is, in this regard, mistaken, the "quasi-jurisdictional . . . nature" of sovereign immunity renders "Rule 12(b)(1) . . . a proper vehicle" for his exhaustion argument. *See Pistor v. Garcia,* 791 F.3d 1104, 1111 (9th Cir. 2015) (citations omitted).

not done so,[3] his case cannot progress here. Effective upon issuance of this order, this matter consequently is stayed pending Pacino's exhaustion of the RVIT appellate judicial review process. *See Horton's Towing,* 906 F.3d at 783 (internal quotations and citation omitted) ("When a party has not exhausted tribal remedies, a district court may elect to dismiss a case or stay the action while a tribal court handles the matter.").

### 2. Enforcement Nexus

Tribal sovereign immunity "protects tribal officials acting within the scope of their valid authority." *Burlington Northern & Santa Fe Ry. Co. v. Vaughn,* 509 F.3d 1085, 1091 (9th Cir. 2007) (citation omitted). The doctrine of *Ex Parte Young,* however, "has been extended to tribal officials sued in their official capacity[,] such that tribal sovereign immunity does not bar a suit for prospective relief against tribal officers allegedly acting in violation of federal law." *Id.* at 1092 (internal quotation marks and citation omitted). Relevant here, this doctrine only applies where "the named official[] ha[s] the requisite enforcement connection to" the challenged tribal law. *Id.* at 1093 (citation omitted) (holding "the *Ex Parte Young* exception" inapplicable against a Tribal Chairman where plaintiffs alleged he was "responsible for exercising executive authority over the Tribe," but not "in any way responsible for enforcing" the contested tribal law).

Read in the most liberal light possible, Pacino's allegations still stop well short of demonstrating any "enforcement connection" between President Russ and the Resolution. *Burlington Northern,* 906 F.3d at 1092 (citation omitted). Indeed, save for a lone reference to a "directive" of unspecified provenance, handed down to tribal police months before President Russ signed the Resolution, the SAC overlooks the subject of the *enforcement* (rather than passage) of RVIT law altogether. Coupled with President Russ's representation that he does not "have the

---

[3] In his papers, Pacino attributes his wariness of the RVIT Court of Appeals to his understanding that the RVIT Constitution precludes *any* further litigation, in *any* forum, following completion of tribal appellate review. Setting aside the yawning doctrinal loopholes that would result were a tribal constitutional provision given such effect, Pacino's interpretation appears to be an outlier. President Russ, for instance, argues only that this Court "should stay its hand *until* the Tribe has had a full opportunity" to adjudicate the instant dispute. *See* Russ Mot. to Dismiss, Dkt. 71 at 14 (emphasis added).

1  authority under tribal law to enforce or implement the Resolution," this omission dooms Pacino's

2  reliance on *Ex Parte Young*. *See* Russ Mot. to Dismiss, Dkt. 71 at 16. On the facts alleged,

3  President Russ remains immune from this action.

4  **C. Oliver**

5  By way of contrast with President Russ, Oliver objects to Pacino's complaint on a more

6  essential level. In her view, the SAC advances little more than jurisdictionally deficient state-law

7  trespass allegations, masquerading as a basis for federal relief. Oliver is mistaken.

8  Section 345 of the GAA "contemplates two types of suits involving allotments: suits

9  seeking the issuance of an allotment, and suits involving the interests and rights of the Indian in

10  his allotment . . . after he has acquired it[.]" *United States v. Mottaz*, 476 U.S. 834, 845 (internal

11  quotation marks and citations omitted). In earlier versions of the complaint, Pacino's bid to jam

12  his way into the second of these boxes fell flat due, in no small part, to his single-minded focus on

13  the Olivers' alleged tortious trespass. *See generally* Order Dismissing Complaint for Lack of

14  Subject Matter Jurisdiction, Dkt. 24 at 4-5 (explaining that, under *Mottaz*'s second prong, the

15  interest or right asserted must "be based upon a specific protection of federal law"). With *this*

16  version of his complaint, though—replete with averments of newly-erected fencing, locked gates,

17  and the Olivers' assertion of an affirmative right to possess the Allotment, irrespective of co-

18  owner consent—Pacino quite clearly implicates his right not to be "den[ie]d access to, and

19  exclude[ed] from" the Allotment. *See* SAC, Dkt. 27 at 8. Helpfully, this is the exact post-issuance

20  allotment interest over which the GAA, by its terms, confers federal jurisdiction. *See generally* 28

21  U.S.C. § 345 (emphasis added) ("All persons who are in whole or in part of Indian blood or

22  descent . . . who claim to have *been unlawfully denied or excluded from* any allotment or parcel of

23  land to which they claim to be lawfully entitled by virtue of any Act of Congress, *may* commence

24  and prosecute . . . any action . . . in relation to their right thereto in the proper district court of the

25  United States; and said district courts *are given jurisdiction* to try and determine any [such]

26  action[.]"). If this controversy remains live once the stay on it has been lifted, Pacino may

continue to prosecute his GAA claim[4] against Oliver.

## IV. CONCLUSION

Consistent with the foregoing, Pacino's mandamus claim against Secretary Haaland, along with his claim against President Russ, is dismissed without prejudice; Oliver's motion is denied in its entirety; and this matter is hereby stayed pending a showing that Pacino has exhausted the RVIT judicial system's appellate review process.[5]

**IT IS SO ORDERED**.

Dated: April 23, 2021

RICHARD SEEBORG
Chief United States District Judge

---

[4] As a doctrinal matter, the term "GAA claim" may not be strictly accurate: in some courts' view, § 345 "grants [federal] jurisdiction," but "does not create [a] cause of action[.]" *See Nahno-Lopez v. Houser,* 625 F.3d 1279, 1282 (10th Cir. 2010) (citation omitted). Assuming this is the case, Pacino's claim against Oliver might be more properly (if more wordily) classified as a federal quiet title action, brought under the jurisdictional aegis of the GAA. *See Pinkham v. Lewiston Orchards Irr. Dist.,* 862 F.2d 184, 189 n.5 (9th Cir. 1998) (internal quotation marks and citation omitted) ("§ 345 has been used by Indians to sue parties other than the United States to quiet title to land originally given under various allotment schemes."); *see also United States v. Pend Oreille Pub. Util. Dis. No. 1.,* 28 F.3d 1544, 1549 n.8 (9th Cir. 1994) (listing other "federal common law causes of action to protect Indian lands"). In either event, Pacino now has alleged sufficient facts to seek relief against Oliver in federal court.

[5] Pacino's obligation to make this showing is not absolute. "If a functioning [tribal] appellate court does not exist, exhaustion is per se futile." *Johnson v. Gila River Indian Community,* 174 F.3d 1032, 1036 (citation omitted). Insofar as he is able to raise "sufficient genuine issues of material fact" concerning the Tribal Court of Appeals' responsiveness to his case, Pacino therefore retains an alternative to the prudential exhaustion requirement. *See id.* ("[T]he lack of a briefing schedule, scheduled appellate argument, a meaningful response to the notice of appeal, or an answer to any of [appellant's] correspondence for an abnormally extensive period create doubt that a functioning appellate court exists.").